Christina Kuhn, as Administratrix, etc., of Joseph Kuhn, Deceased, Respondent, v. The Delaware, Lackawanna and Western Railroad Company, Appellant.

*Master and servant — safe place for a servant — reasonably good appliances — opinion as to the strength of wood.*

In an action brought to recover damages resulting from the alleged negligence of the defendant, it appeared that the plaintiff's intestate was working upon a scaffold which had been erected by the defendant for use in reslating the roof upon its engine house; that the defendant's superintendent of repairs directed the foreman of the defendant's carpenter shop to construct "some horses that would be sufficient for men to work upon and slate the roof;" that he did not give any specific instructions as to what material was to be used, nor state the number of men who were to work upon the scaffold which the horses were intended to support; that the scaffold as constructed was about sixteen feet from the ground, twenty-five feet in length, and was supported by three horses. The evidence tended to show that one or more of the horses gave way, and that this was the cause of the injuries sustained by plaintiff's intestate.

*Held,* that the defendant owed the intestate the duty of exercising reasonable care and prudence in furnishing him a safe and proper place in which to work, and, if the place became dangerous, and the danger could be foreseen, to adopt such precautions as would protect the intestate;

That this duty could not be delegated to another so as to exonerate the defendant from liability in the premises;

That the defendant was not bound to use the best possible appliances, and had performed its duty if those supplied were adequate and proper for the use to which they were to be applied;

That a carpenter and builder of experience might give his opinion concerning the strength of hemlock as compared with other woods, and might testify as to whether it was strong or weak when in the form of a board.

Appeal by the defendant, The Delaware, Lackawanna and Western Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Oneida on the 19th day of January, 1895, upon the verdict of a jury rendered after a trial at the Oneida Circuit, and also from an order entered in said clerk's office on the 17th day of January, 1895, denying the defendant's motion for a new trial made upon the minutes.

This action was brought to recover damages for alleged negligence which caused the death of plaintiff's intestate.

*William Kernan*, for the appellant.

*Charles H. Searle*, for the respondent.

HARDIN, P. J. :

Plaintiff's intestate, at the time he received the injuries complained of, was at work upon a scaffold which had been erected by the defendant to use in reslating the roof upon its engine house, in the city of Utica. In September, 1891, the superintendent of repairs of the defendant directed the foreman of the defendant's carpenter shop to construct " some horses that would be sufficient for men to work on and slate the roof," which direction was not accompanied by any specific instruction as to what material was to be used, nor as to the number of men that were to work upon the scaffold, which the horses, thus directed to be built, were intended to support. The scaffold as constructed was some sixteen feet above the ground, and in length about twenty-five feet, and was supported by three horses, one at each end and the other in the center. Evidence was given upon the trial tending to show that the accident, in which the injuries complained of were received, was occasioned by the giving way of one or more of the horses upon which the planks for the platform or scaffold were placed. While there was considerable conflict in the evidence, we are of the opinion that the jury had before it evidence sufficient to warrant it in finding that the injuries which the plaintiff's intestate received were due to the structural weakness of the scaffold, which originated from the use of insufficient or improper materials, and from its being constructed in an insufficient and improper manner. The defendant sought to have the court nonsuit the plaintiff, and when the motion for that purpose was denied took an exception.

When this case was before us on a former appeal (77 Hun, 389) quite a full discussion was had of the principles of law applicable to the general features of the case, and near the close of the opinion it was said " that the defendant owed the plaintiff's intestate the duty to exercise reasonable care and prudence to furnish him a safe and proper place in which to prosecute his work, and if it became dangerous, and the danger could be foreseen and guarded against by the exercise of reasonable care, to exercise such care and adopt such precautions as would protect the intestate,

is abundantly established by the authorities cited. That this duty could not be delegated by the defendant to any of its servants so as to exonerate it from responsibility to the plaintiff or her intestate is equally well settled." After a full consideration of the evidence found in the present appeal book, and due deference being had to the conclusion reached by us on the former appeal, we think the trial judge properly submitted to the jury the question whether the defendant had performed its full duty, and, if not, whether the omission of such duty occasioned the injury to the plaintiff's intestate, and whether that injury resulted in his death. We think, upon the whole evidence, these were questions of fact for the jury to determine, and that the trial judge properly refused to rule, in accordance with the defendant's contention upon them as matters of law and committed no error in confiding the question to the jury. Apparently the trial judge, in the course of his rulings at the trial, and in the delivery of his charge to the jury, followed the doctrine laid down in the opinion of this court when the case was here upon the former appeal. The jury were carefully instructed that if the deceased in any way contributed to the injuries which he received, especially if he " knowingly aided in placing too much weight" upon the scaffold, that a recovery could not be had.

(2) We think no error was committed by the trial judge in delivering the case to the jury upon that branch of it which relates to the conduct of the deceased after he received the injuries complained of. The jury were told in explicit language that " if there was negligence on the part of the deceased contributing to the death, and in the absence of which the death would not have occurred, then it could not be said that his death was the result of the accident, but was the result of his own negligence. But if death would have occurred in any event, whether he was careless or not, then I do not think the defendant is relieved." The language we have quoted was, in substance, again repeated, and we think was sufficiently adhered to in all comments made by the trial judge to the jury on that branch of the case, and that the exceptions taken by the defendant to the charge in regard to that branch of the case do not present any error requiring us to interfere with the verdict.

(4) When the question was propounded as to the custom of slating upon scaffolds, it appears by the case that the question was answered

before any objection was made thereto. When the objection was heard the court observed, "I think I will let it stand." The fact had already appeared in the case that scaffolds were used in the process of slating, and we think the question may have been understood to be an inquiry as to the knowledge of the witness on the subject of the use of scaffolds in slating roofs. We think the exception taken to the observation of the court does not require us to interfere with the verdict.

(5) When Richards, a carpenter and builder, was upon the stand he gave evidence as to his experience in erecting scaffolds for shinglers and repairers to work upon, and stated that he had erected many scaffolds upon which slaters had worked. He also stated, without objection, that hemlock has "a loose fiber." Thereupon he was asked, "Is it a strong wood or a weak wood in the form of a board?" This was objected to as incompetent, and the objection was overruled and the defendant took an exception. The only answer the witness made was in the following language, "Well, it is not so strong as some wood." Thereupon the question was propounded to him, "What wood is stronger?" This question was objected to and the objection was overruled and the defendant took an exception, and the witness answered, "Most any kind of wood." He was then, against the defendant's objection and exception, asked to state the effect of nailing upon a hemlock board, and in answer to the question said, "Well, of course it don't hold as much as it would in thicker stuff." After that answer had been given the defendant moved to strike out the answer and the court refused to grant such motion and the defendant excepted. Some other questions were propounded of a similar nature relating to the nature and character of hemlock and the strength of inch boards. Most of the facts stated by this witness are so well understood that the court may be said to be able to take judicial notice thereof. However, under the circumstances, we think that the witness was not improperly permitted to give the facts narrated by him in respect to the nature and character of hemlock, and as to its strength as material to be used in scaffolding. Nor do we think there was any error committed in allowing him to state, what must be quite obvious to the common sense of any individual, that a stick of timber two-by-four would exceed in strength one "being made of inch boards." We are of

the opinion that there is nothing found in the testimony of Richards, the carpenter, which requires us to disturb the verdict of the jury.

In the course of the charge delivered by the judge he referred to the rule laid down in *Stringham* v. *Hilton* (111 N. Y. 195), and called the attention of the jury to the statement in the course of the opinion that the question to be decided in cases of this character is "whether in selecting tools and machinery for their use, he (the employer) was reasonably prudent and careful; not whether better machinery might not have been obtained, but whether that provided was in fact adequate and proper for the use to which it was to be applied." He followed this rule of law by observing, viz. : "Evidently the horses might have been made larger and stronger. As suggested by the counsel two-by-fours might have been used for the legs. They might have used immensely stronger lumber all around ; larger size and all that. The defendant was not guilty of negligence because it did not furnish the very strongest horses that could have been made. That is not the test. The question is, whether the one it did furnish was reasonably safe. That is the rule. Of course it is a question of fact in each particular case." We think the questions relating to the alleged defective construction of the scaffold were properly and carefully submitted by the trial judge to the jury, and as their findings are adverse to the defendant, it seems to be our duty to accept their verdict.

The judgment and order must be affirmed, with costs.

MARTIN and MERWIN, JJ., concurred.

Judgment and order affirmed, with costs.